## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC JOELNER, FISH, INC., d/b/a XXXTREME ENTERTAINMENT, FREE SPEECH, INC., and FIRST AMENDMENT, INC., )<br><br>Plaintiffs, )<br><br>vs. )<br><br>THE VILLAGE OF WASHINGTON PARK, ILLINOIS, )<br><br>Defendant. ) | CIVIL NO.  03-325-GPM |

## MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

On June 6, 2006, the Court, sitting without a jury, conducted a trial on the claims of Plaintiffs' first amended supplemental complaint (Doc. 45).  Pursuant to Federal Rule of Civil Procedure 52, the Court now makes the following findings of fact and conclusions of law.

### BACKGROUND

The early background of this case is set forth in the Seventh Circuit's opinion on the appeal of this Court's issuance of a preliminary injunction.  *See Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613 (7th Cir. 2004).  In a nutshell, the case involves Eric Joelner's attempt to obtain licenses to conduct adult entertainment businesses within the Village of Washington Park, Illinois (the "Village").  Joelner is the president and sole shareholder of Fish, Inc., d/b/a XXXtreme Entertainment, Free Speech, Inc., and First Amendment, Inc.  He currently operates an adult video and bookstore at 2226 Kingshighway in the Village, and he seeks to obtain additional licenses to

operate adult entertainment businesses at 2219-2221 Kingshighway and 5900-6100 Bunkum Road.

On June 12, 2003, this Court granted in part and denied in part a request for a preliminary injunction.  The Court found that certain ordinances which imposed limitations on the number of adult entertainment outlets and hefty fees for obtaining a license were constitutional and refused to enjoin the Village from enforcing the ordinances.  The Court refused to require the Village to issue new licenses but ordered it to allow Joelner to continue operating at his current business (2226 Kingshighway).   The Court also ordered the Village to consider in a new hearing Joelner's application for a cabaret license at the current location so long as he paid arrearages and the newly approved fees.

The Seventh Circuit affirmed in part, vacated in part, and remanded the case for further proceedings. *Id.*  The Seventh Circuit found that this district court correctly refused to preliminarily enjoin the Village from enforcing the ordinances and appropriately ordered the Village to allow Joelner to continue operating his current business.  The Seventh Circuit also found, however, that this Court erred in requiring Joelner to pay the disputed fees and in ordering the Village to hold a hearing on his cabaret license application.

After the Court received the Seventh Circuit's mandate, the case was set for a bench trial on April 19, 2005.  Days before the final pretrial conference was held, the Village moved to dismiss the case for mootness.  It argued that the Village had just passed a new ordinance, No. 01-63, which repealed the four ordinances that were the subject of the earlier appeal, thereby rendering the case moot.  Plaintiffs countered with a request to file an amended complaint, arguing that the new regulatory scheme is still unconstitutional and that the Village had refused Joelner's applications for a license under the new ordinance.  That request was granted, and the instant amended complaint

was filed on August 8, 2005.

The new Ordinance 01-63 does away with the ban on the number of licenses, eliminates the distinction between cabarets and adult bookstores, and lowers the licensing fee to $1,200. But there is a catch: the new ordinance also states:

> It shall be a violation of this ordinance for any person to sell, use, or consume alcoholic beverages on the premises of a sexually oriented business. This prohibition shall not apply to entities licensed as adult cabarets under prior Village ordinances.

(*See* Trial Exhibit 1, Section 18.) Thus, the ordinance bans the sale of alcohol at future licensed adult entertainment businesses, but exempts current licensees. It also exempts current licensees from other new restrictions. (*See* Trial Exhibit 1, Sections 4, 13, and 14.)

The amended complaint consists of three counts. The first seeks a declaratory judgment that ordinances 069-99, 01-22 and 01-63 are facially unconstitutional and as applied. Plaintiffs seek a declaration that the Village has unconstitutionally retaliated against Plaintiffs for exercising their First and Fourteenth Amendment rights, as well as a declaration that the Village has violated the Fourteenth Amendment by treating similarly situated businesses differently without an important government objective for doing so. Plaintiffs also seek a preliminary and permanent injunction allowing their business to remain open at its present location, barring the Village from imposing a $30,000 license fee or head tax, ordering the Village to issue sexually oriented business licenses under the same terms and conditions as all similarly situated businesses for Plaintiffs' property at 2219-2221 Kingshighway and 2226-2244 Kingshighway, and on vacant property at 5900-6100 Bunkum Road, and enjoining the Village from any further interference with Plaintiffs' business. The Village claims it has offered Eric Joelner a license under the new ordinance, but he has refused it.

### FINDINGS OF FACT

1.    Eric Joelner has an ownership interest in the properties located at 2226 Kingshighway, 2219-2221 Kingshighway, and 5900-6100 Bunkum Road, as he, personally and/or through his various corporate entities, is paying rent to a corporation owned by his wife for two of them (2226-2228 Kingshighway and 2219-2221 Kingshighway) and purchasing the other (5900-6100 Bunkum Road).

2.    There are eight businesses in the Village holding adult entertainment licenses under the previous ordinances: Miss Kitty's, DeJa Vu (d/b/a Larry Flynt's Hustler Club), Hollywood Showclub, C-Mowe's, Dollie's, Soft Touch, LILD, and Insane Management Company.

3.    Six of these are currently operating as adult entertainment establishments, hold liquor licenses issued by the Village, and serve alcohol: Miss Kitty's, DeJa Vu (d/b/a Larry Flynt's Hustler Club), Hollywood Showclub, C-Mowe's[1], Dollie's, and Soft Touch.

4.    The other two license holders, LILD and Insane Management Company, are not currently in operation and the property for which they hold the license is vacant.

5.    There have been no applications for adult entertainment licenses under the new Ordinance 01-63 other than Joelner's.

6.    Sales tax from adult entertainment venues and taverns is the Village's primary source of income.

7.    There was no evidence produced at trial concerning the effects of allowing alcohol to be served at adult entertainment venues, and the preamble to Ordinance 01-63 neither mentions

---

[1]Testimony at trial revealed that C-Mowe's was destroyed by fire but was in operation until very recently.

alcohol nor reports on studies or findings relating to the alleged deleterious effects of the combination.

### DISCUSSION

A regulation prohibiting the sale or consumption of alcohol on the premises of adult entertainment establishments is constitutional if the following factors are met:

(1)     the State is regulating pursuant to a legitimate governmental power;

(2)     the regulation does not completely prohibit adult entertainment;

(3)     the regulation is aimed not at the suppression of expression, but rather at combating the negative secondary effects caused by adult entertainment establishments; and

(4)     the regulation is designed to serve a substantial government interest, narrowly tailored, and reasonable alternative avenues of communication remain available or, alternatively, the regulation furthers an important or substantial government interest and the restriction on expressive conduct is no greater than is essential in furtherance of that interest.

*Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 722 (7th Cir. 2003).  The first two prongs of this test are met; the Village is within its general police powers, and the regulation certainly does not completely prohibit adult entertainment.

Ordinance 01-63 states that it was adopted for purposes unrelated to the suppression of expression (*see* Section 1(a) ("It is the purpose of this ordinance to regulate sexually oriented businesses in order to promote the health, safety, moral, and general welfare of the citizens of the Village, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within the Village.")).  Unlike the ordinance in *Ben's Bar*, however, there is nothing in the stated reasons for adopting the ordinance about the consumption of

alcohol.[2] Although the Village's counsel argues that such reasons can be inferred from those stated, there simply is no evidence that the Village conducted any studies, and it points to no legislative findings that alcohol and adult entertainment are an undesirable combination.

The record does not sufficiently support the Village's claim that the prohibition on liquor in future clubs is a reasonable attempt to eliminate the undesirable secondary effects associated with barroom adult entertainment.  The preamble to the ordinance does not indicate that the Village's decision to prohibit alcohol was motivated by secondary effects.  To the contrary, its decision appears to be specifically aimed at Mr. Joelner because all current licensees enjoy the right to sell alcohol.  Unlike the instant case, the ordinance at issue in *Ben's Bar* mandated a *complete* ban on alcohol at adult entertainment establishments in the municipality, and, as such, the Seventh Circuit found that the prohibition was no greater than necessary to further a substantial interest in combating the secondary effects resulting from the combination of nude dancing and drinking.  *Ben's Bar*, 316 F.3d at 727. But the idea that restricting liquor sales prospectively in cabarets would somehow mitigate the pernicious effects of the toxic combination of alcohol and adult entertainment in Washington Park is akin to limiting an alcoholic to two quarts of liquor a day after he has for years enjoyed unlimited consumption.  In either case he will always be drunk with debilitating illness sure to follow.

The Village's purported limitation on alcohol is also suspect given that adult entertainment and alcohol sales are its primary source of revenue.  The general statements in Ordinance 01-63 are

---

[2]In the legislative findings section of the ordinance at issue in *Ben's Bar*, the municipality made a specific finding that:  "The consumption of alcoholic beverages on the premises of a Sexually Oriented Business exacerbates the deleterious secondary effects of such businesses on the community."  *Ben's Bar*, 316 F.3d at 705.

insufficient to demonstrate that the prohibition on alcohol and adult entertainment in the same establishment is necessary to serve a compelling state interest and narrowly drawn to that end.  The ordinance appears to have been enacted to restrict Joelner and his corporations from operating adult entertainment businesses in the Village, thereby violating his constitutional rights.  The ordinance does not even explain what the deleterious effects of the combination of alcohol and adult entertainment are, let alone make findings that the Village seeks to combat these effects.

Even if the Court subjects the ordinance to the less demanding intermediate level of scrutiny, the Village would still have to meet the fourth prong of the analysis by showing that the ordinance serves a substantial government interest, is narrowly tailored, and does not unreasonably limit alternative avenues of communication.  It has not done this.

> [I]n order to justify a content-based time, place, and manner restriction or a content-based regulation of expressive conduct, a municipality 'must advance some basis to show that its regulation has the purpose and effect of suppressing secondary effects [i.e., is designed to serve, or furthers, a substantial or important governmental interest], while leaving the quantity and accessibility of speech substantially intact [i.e., that the regulation is narrowly tailored and does not unreasonably limit alternative avenues of communication, or, alternatively, that the restriction on expressive conduct is no greater than is essential in furtherance of that interest].'

*Ben's Bar*, 316 F.3d at 725 (quoting *City of Los Angeles v. Alameda Books, Inc.*, 122 S. Ct. 1728, 1741 (Kennedy, J. concurring)).  But the Village "may not assert that it will reduce secondary effects by reducing speech in the same proportion."  *Id.*  Thus, the rationale behind Ordinance 01-63 must be that it will suppress secondary effects, not speech.  Again, there is nothing in the ordinance explaining why it is necessary to prohibit alcohol in future adult entertainment venues while allowing it in eight others.

Finally, this Court is mindful how this dispute must look from a distance. The idea that First

Amendment values are somehow attenuated by limiting so called adult entertainment in Washington Park is startling considering that this industry is the largest source of legal revenue for the Village. Suffice it to say there is almost unlimited free expression in Washington Park all hours of the day. Then, there is the lately felt but still undeveloped concern of the Village Board that the line on alcohol must be drawn now lest the pernicious effects of combining the same with adult entertainment lead to unwholesome secondary effects. But the Village Board's highly developed libertarianism belies this concern. For instance, the latest version of the challenged ordinance specifically scotches the restriction on masturbation in adult entertainment facilities. So, what secondary effect would really be too offensive for the Village Board? In reality the First Amendment is only peripherally implicated by what is at bottom a routine dispute between a businessman and a local municipality.  Mr. Joelner's sale of alcohol will perhaps cut into his competitor's profits, but it will surely not add to the woes of Washington Park.

### CONCLUSIONS

In light of the foregoing, the Court hereby **DECLARES** as follows:

1.      The restriction on selling alcohol in Section 18 of Ordinance No. 01-63 is on its face unconstitutional.

2.      The Village's denial of adult entertainment licenses to Plaintiffs is unconstitutional.

3.      The licensing scheme itself is an unconstitutional suppression of protected First Amendment activities and not a content neutral, reasonable time, place, or manner regulation of secondary effects of speech activities.

The Village is hereby **ORDERED** to immediately issue three adult entertainment license applications to Eric Joelner.  Upon receipt of the completed applications with the proper fees as set

forth in Ordinance 01-63, the Village **SHALL** immediately issue the requested adult entertainment licenses.  The Village **SHALL** allow Plaintiffs to conduct business at 2226-2244 Kingshighway, 2219-2221 Kingshighway, and 5900-6100 Bunkum Road in the same manner as all similarly situated businesses in the Village as of the date of this Memorandum and Order.

Plaintiffs are awarded attorney's fees pursuant to 42 U.S.C. § 1988 and costs, and the Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  06/08/06

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge